*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 18-CV-1257 & 19-CV-0064

NICHOLAS ANTHONY CZAJKA, APPELLANT,

v.

HOLT GRAPHIC ARTS, INC., APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(2018-CAR-003673)

(Hon. William M. Jackson, Trial Judge)

(Argued En Banc December 12, 2023    Decided March 7, 2024)

*David H. Cox*, with whom *Erica L. Litovitz* was on the brief, for appellant.

*Michael N. Russo, Jr.* for D.C. Land Title Association, amicus curiae in support of appellant.

*Horace L. Bradshaw, Jr.* for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH, EASTERLY, MCLEESE, DEAHL, HOWARD, and SHANKER, *Associate Judges*.

Opinion for the court by *Associate Judge* MCLEESE, with whom BLACKBURNE-RIGSBY, *Chief Judge*, and DEAHL and HOWARD, *Associate Judges*, join.

Dissenting opinion by *Associate Judge* SHANKER, with whom *Associate Judges* BECKWITH and EASTERLY join, at page 27.

MCLEESE, *Associate Judge*: Appellee Holt Graphic Arts, Inc. ("HGA") obtained a judgment in California, filed that judgment in the Superior Court of the District of Columbia, and then initiated the present action to enforce that judgment. Appellant Nicholas Anthony Czajka argues that the trial court should have dismissed the action as barred by the statute of limitations. A division of the court affirmed the trial court's denial of the motion to dismiss. *Czajka v. Holt Graphic Arts, Inc.*, 285 A.3d 524 (D.C. 2022); *id.* at 535 (Easterly, J., dissenting). The court granted rehearing en banc and vacated the decision of the division. *Czajka v. Holt Graphic Arts, Inc.*, Nos. 18-CV-1257, etc., 2023 WL 3674359 (D.C. May 25, 2023). After further briefing and oral argument, the en banc court largely adopts the decision of the division as the decision of the en banc court, with certain revisions.

## I. Factual and Procedural Background

The following basic facts appear to be undisputed for current purposes. HGA obtained a judgment against Allen Wilson in California in 2001. HGA filed the California judgment in Superior Court in November 2006. HGA then began efforts in Superior Court to enforce that judgment, including by trying to force the judicial sale of a condominium owned by Mr. Wilson in the District of Columbia. Substantial additional litigation ensued, and no judicial sale occurred. Rather,

Mr. Wilson passed away, and the personal representative of Mr. Wilson's estate sold the condominium to two purchasers who in turn sold the condominium to Mr. Czajka.

In May 2018, HGA filed the current action, seeking to judicially foreclose on the condominium in order to enforce the California judgment that had been filed in Superior Court. Mr. Czajka's predecessors in interest moved to dismiss the action, arguing among other things that the action was barred by the twelve-year statute of limitations applicable to the enforcement of judgments rendered by the Superior Court. D.C. Code § 15-101(a). HGA opposed the motion to dismiss, arguing among other things that the twelve-year period did not begin to run until the California judgment was filed in Superior Court in November 2006.

The trial court agreed with HGA and denied the motion to dismiss. The trial court also granted summary judgment to HGA on the merits, directing that the condominium be sold and that the proceeds be applied to HGA's judgment.

## II. Analysis

On appeal, Mr. Czajka argues only that HGA's action was barred by the statute of limitations. We uphold the ruling of the trial court on that issue.

"We decide issues of statutory interpretation de novo." *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020). "In interpreting statutory text, we first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *Id.* (brackets and internal quotation marks omitted). We also "consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *Id.*

## A. Statutory Text

The issue before the court turns on the interaction between two provisions. We have already mentioned the first: D.C. Code § 15-101(a). In pertinent part, that provision states,

> [E]very final judgment or final decree for the payment of money rendered in the . . . Superior Court of the District of Columbia, when filed and recorded in the office of the Recorder of Deeds of the District of Columbia, is enforceable, by execution issued thereon, for the period of twelve years only from the date when an execution might first be issued thereon . . . .

The second provision, D.C. Code § 15-352, governs the filing of foreign judgments. In pertinent part, that provision states, "A foreign judgment filed with the Clerk shall have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner." For purposes of that

provision, a foreign judgment is "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in the District." D.C. Code § 15-351(2). Until argument before the en banc court, it was undisputed that the California judgment is a foreign judgment for purposes of Section 15-352. At oral argument before the en banc court, however, Mr. Czajka suggested that HGA was required to keep the California judgment alive in California even after that judgment was filed in the District of Columbia, and that HGA's failure to do so meant that the California judgment was no longer entitled to full faith and credit and was unenforceable in the District of Columbia. We decline to consider that belated argument. *See, e.g., Jung v. Jung*, 844 A.2d 1099, 1112 n.9 (D.C. 2004) ("We usually do not consider claims raised for the first time during oral argument because of the unfairness to the opponent, who has not had an opportunity to consider and present a response.").

Mr. Czajka appears to read Section 15-101(a) and Section 15-352 in the following way. Under Section 15-101(a), the twelve-year limitations period for a Superior Court judgment begins to run as of the date when "an execution might first be issued thereon." Once filed in Superior Court, a foreign judgment has the same effect as a Superior Court judgment, is subject to the same defenses, and is enforced in the same manner. D.C. Code § 15-352. The limitations period for enforcing a foreign judgment that has been filed in Superior Court therefore is twelve years from

when the execution might have been had on the foreign judgment. Implicitly assuming that California law permits immediate execution on judgments, Mr. Czajka concludes that the twelve-year period began to run when the California judgment was entered in 2001. On that view, this action is untimely, because the action was filed in 2018.

HGA reads the provisions differently. HGA points out that an execution could not have been issued on the California judgment *in Superior Court* until the California judgment was filed in Superior Court. HGA emphasizes the language in Section 15-352 stating that a registered foreign judgment has the same effect as a Superior Court judgment and may be enforced in the same manner. Although HGA does not fully lay out the steps in its reasoning, the theory seems to be the following: (1) the limitations period for a Superior Court judgment cannot begin until judgment has been rendered in Superior Court; (2) foreign judgments should be treated in the same way; and (3) the limitations period for foreign judgments thus cannot begin until the foreign judgment has been filed in Superior Court. On that theory, this action is timely, because the California judgment was filed in Superior Court in November 2006 and the action was filed in May 2018.

In a related but potentially distinct line of reasoning, HGA argues that the filing of the California judgment in Superior Court created a new judgment. On

HGA's view, that new judgment would be enforceable for twelve years from the date of its entry. Arguably, the new judgment would be enforceable for twelve years after the new judgment could be executed upon, rather than the date the new judgment was entered. *See* D.C. Code § 15-101(a); Super. Ct. Civ. R. 62(a) (judgments generally may not be executed upon until thirty days after entry). The current action would also be timely under this line of reasoning.

Mr. Czajka and HGA each contend that their interpretation is compelled by the plain language of the provisions. We conclude instead that both proposed interpretations are facially plausible readings of the statutory language at issue. It is undisputed that a filed foreign judgment "shall have the same effect" as a Superior Court judgment. The question is whether that requires that the filed foreign judgment be treated like a Superior Court judgment rendered on the date of the foreign judgment or instead like a Superior Court judgment rendered on the date the foreign judgment was filed in Superior Court. In our view, the text of Sections 15-101(a) and 15-352 does not clearly answer that question. We therefore turn to other tools of statutory interpretation.

## B. Statutory Context, Structure, and History

### 1. D.C. Uniform Enforcement of Foreign Judgments Act

Section 15-352 was enacted in 1990, as part of the District of Columbia Uniform Enforcement of Foreign Judgments Act ("DC UEFJA"). D.C. Law 8-173, § 2(b), 37 D.C. Reg. 5005 (Oct. 2, 1990). The DC UEFJA is closely modeled on the Revised Uniform Enforcement of Foreign Judgments Act of 1964 ("RUEFJA"). Unif. Enf't of Foreign Judgments Act, Revised 1964 Act, 13 pt. 1 U.L.A. 155-245 (2002); *see* The Uniform Enforcement of Foreign Judgments Act of 1990, D.C. Council, Report on Bill 8-56 at 2 (June 20, 1990). Section 15-352 is almost identical to Section 2 of the RUEFJA, with some minor wording changes to tailor the provision to the Superior Court. 13 pt. 1 U.LA. at 163. Also, one sentence from the RUEFJA was not included in Section 15-352. *See* 13 pt. 1 U.L.A. 163 ("The Clerk shall treat the foreign judgment in the same manner as a judgment of the [District Court of any city or county] of this state.") (brackets in original). The committee report makes clear that the DC UEFJA was intended to be substantially identical to the RUEFJA. *See* Report on Bill 8-56 at 2 (stressing need for uniformity among states and describing Bill 8-56 as having been adopted in thirty-nine states); *see also id.* at 4 (witness describes Bill 8-56 as "almost identical" to RUEFJA); *id.* attach. 3 at 4-5 (witness describes Bill 8-56 as "substantially identical" to RUEFJA, with

changes "of a technical or grammatical nature"). When it enacted the DC UEFJA, the D.C. Council explicitly directed the courts to interpret the DC UEFJA "to effectuate its general purpose to make uniform the law of jurisdictions that enact" the RUEFJA. D.C. Code § 15-357; *see also Nader v. Serody*, 43 A.3d 327, 333 (D.C. 2012) ("The UEFJ[A]'s general purpose is to obtain uniformity with the rulings of [other] state courts.") (internal quotation marks omitted).

The committee report on the DC UEFJA does not directly address the issue in this case. The report explains generally that the purpose of the DC UEFJA is to "provide an expeditious and simple procedure to enforce foreign judgments in courts of the District of Columbia." Report on Bill 8-56 at 2. The report also states that "[t]he act of filing the foreign judgment gives it the effect of being a judgment of the court in the state in which it is filed, thereby eliminating the need for another trial." *Id.*

As is explained more fully *infra* at pp. 14-16, the legislative history of the DC UEFJA indicates that the D.C. Council intended to add a streamlined alternative means of enforcing foreign judgments, not to supplant the preexisting common-law approach.

## 2. State Decisions

This court has not squarely addressed the issue before us in this case. We therefore look for guidance from the decisions of state courts that have enacted the RUEFJA. Unfortunately, state courts have not reached consistent conclusions about the interaction between their statutes of limitations and provisions the same as, or similar to, Section 2 of the RUEFJA. It appears, however, that the substantial weight of authority holds that the filing of a foreign judgment triggers a new limitations period. *See, e.g.*, *Hanley Eng'g, Inc. v. Weitz & Co.*, 516 P.3d 1192, 1195-96 (Or. Ct. App. 2022) (statute of limitations began to run on date judgment was filed in new state, not on date judgment was originally entered); *Flangas v. Perfekt Mktg., LLC*, 507 P.3d 574, 578 (Nev. 2022) (same); *Nielson v. Schmoke*, 863 S.E.2d 652, 656-59 (N.C. Ct. App. 2021) (same; citing numerous cases, including decisions from Maryland, New Jersey, and Louisiana); *Ware v. Everest Grp., L.L.C.*, 238 S.W.3d 855, 863-64 (Tex. App. 2007) (same); *Logemann Holding, Inc. v. Lieber*, 793 N.E.2d 135, 136-139 (Ill. App. Ct. 2003) (same); *Potomac Leasing Co. v. Dasco Tech. Corp.*, 10 P.3d 972, 975 n.2 (Utah 2000) (same); *Drllevich Constr., Inc. v. Stock*, 958 P.2d 1277, 1279-81 (Okla. 1998) (same; citing numerous cases, including decisions from New Mexico, New York, South Carolina, and Kansas); *Walnut Grove Prods. v. Schnell*, 659 S.W.2d 6, 7 (Mo. Ct. App. 1983) (same). *But see Alpha Mortg. Fund II v. Drinkard*, 497 P.3d 200, 206 (Idaho 2021) ("[T]he limitations

period begins to run from the date the judgment is entered or last renewed in the rendering state.") (internal quotation marks and emphasis omitted); *Boudette v. Boudette*, 453 P.3d 893, 897 (Mont. 2019) (same); *Wells Fargo Bank, Nat'l Ass'n v. Kopfman*, 226 P.3d 1068, 1071-72 (Colo. 2010) (same); *Corzo Trucking Corp. v. West*, 636 S.E.2d 39, 40-41 (Ga. Ct. App. 2006) (same); *Michael v. Valley Trucking Co.*, 832 So. 2d 213, 217 (Fla. Dist. Ct. App. 2002) (same).

As previously noted, the D.C. Council has directed us to construe the DC UEFJA in favor of uniformity. D.C. Code § 15-357. Although state courts have not reached consistent decisions, we think that considerations of uniformity argue in favor of adopting the approach that appears to be much more broadly followed in the states.

### 3. Federal Law

The RUEFJA was explicitly modeled on a federal statute, 28 U.S.C. § 1963. *See* 13 Pt. 1 U.L.A. 156-57 (citing Section 1963 and stating that RUEFJA "adopts the practice which, in substance, is used in Federal courts"). Section 1963 addresses an analogous issue—registration of judgments from one federal court in another federal court—and its pertinent language is very similar to that of both Section 2 of the RUEFJA and D.C. Code § 15-352. *See* 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court of the district

where registered and may be enforced in like manner."). It appears that every federal court of appeals that has decided the issue has held that registration of a judgment in a new district court pursuant to Section 1963 triggers a new limitations period for the enforcement of the judgment, measured from the date of registration rather than from the date of the original issuance of the underlying judgment. *See, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Asterbadi*, 841 F.3d 237, 243-46 (4th Cir. 2016) (citing cases from the Fifth, Eighth, and Ninth Circuits).

We find those federal decisions very persuasive. *See*, *e.g.*, *Nielson*, 863 S.E.2d at 658 ("Given the similarities between 28 U.S.C. § 1963 and North Carolina's UEFJA, the analysis employed by the Fourth Circuit in *Asterbadi* is highly persuasive and equally employable to this case."); *see also Baker v. Gen. Motors Corp.*, 522 U.S. 222, 235 n.8 (1998) (describing RUEFJA and 28 U.S.C. § 1963 as "similar").

### 4. Broader Context

Before the enactment of the DC UEFJA, foreign judgments were enforced in Superior Court by filing a civil action seeking to obtain a Superior Court judgment. *See, e.g.*, *Amos v. Shelton*, 497 A.2d 1082, 1084 (D.C. 1985) (party seeking to enforce Pennsylvania judgment filed action in Superior Court seeking Superior Court judgment); Report on Bill 8-56 at 4-5 (summarizing testimony indicating that

under current law party seeking to enforce foreign judgment was required to file civil action). The result of that civil action, if successful, was a Superior Court order entering judgment against the debtor. *Amos*, 497 A.2d at 1085-86.

A party who obtained a Superior Court judgment based on a foreign judgment would then apparently have an additional twelve years to enforce that Superior Court judgment. D.C. Code § 15-101(a) (for judgments rendered in the Superior Court, providing twelve-year limitation period beginning "when an execution might first be issued thereon"). Although we have not found decisions from this jurisdiction applying Section 15-101(a) in that context, it appears to be well settled that obtaining a new judgment based on an earlier judgment triggers a new limitation period within which the new judgment may be enforced. *See, e.g.*, Restatement (Second) of Judgments § 18, cmt. c (Am. L. Inst. 1982) (obtaining new judgment in action upon judgment restarts statute of limitations); *H & E Equip. Servs., Inc. v. Cassani Elec., Inc.*, 169 A.3d 1308, 1312 (Vt. 2017) (same); *Galef v. Buena Vista Dairy*, 875 P.2d 1132, 1135 (N.M. Ct. App. 1994) (1989 judgment in New Mexico on action to enforce 1977 California judgment "converted the 1977 California judgment into a separate New Mexico judgment, with applicable New Mexico statutes of limitations to be measured from 1989").

The common law of other jurisdictions also required the filing of a full-blown civil action to establish a foreign judgment. *See, e.g.*, Restatement (Second) of Judgments § 8 cmt. d (Am. L. Inst. 1982) ("[I]n the absence of legislation[,] the judgment of one state is not immediately enforceable by executive action in [another] state. Instead, the judgment must first be made a judgment in the state where it is to be enforced. This is done by bringing an action on the judgment in that state or, if statute permits, by registering it with an appropriate court in the state."); 30 Am. Jur. 2d *Executions* § 580 (2022) ("At common law, a judgment rendered by a court of [another] state may not be enforced without the institution of an action based thereon and the recovery of a judgment in such action. An action based on a judgment entered in [another] state is considered a new and independent action . . . .") (footnote omitted). Dissatisfaction with the cumbersome nature of that approach led to the RUEFJA, which was intended to promote efficiency and reduce the burden on state courts by creating a "speedy and economical method" of recognizing foreign judgments. *See* 13 Pt. 1 U.L.A. 157.

The RUEFJA did not displace the older, more cumbersome way of making a foreign judgment enforceable. Rather, Section 6 of the RUEFJA, entitled "Optional Procedure," provides that "[t]he right of a judgment creditor to bring an action to enforce [the] judgment instead of proceeding under this Act remains unimpaired."

13 Pt. 1 U.L.A. 243. The DC UEFJA provides the same, in virtually identical language. D.C. Code § 15-356.

This broader context is relevant in three related ways. First, under the law before the RUEFJA, establishing a foreign judgment generally triggered a new limitations period. The RUEFJA and the DC UEFJA were intended simply to provide an additional, streamlined process for establishing foreign judgments. There is no suggestion in the history of either provision that the provisions were intended to take the significant and distinct step of reducing the time within which foreign judgments could be enforced in a new state where the new streamlined alternative process was utilized. *Cf., e.g.*, *Jones v. United States*, 526 U.S. 227, 234 (1999) (noting "fair assumption that Congress is unlikely to intend any radical departures from past practice without making a point of saying so"). In fact, it is quite clear that the drafters of the RUEFJA and the DC UEFJA had no intent to reduce the time within which foreign judgments could be enforced, because they left the common-law practice in place as an alternative.

Second, Mr. Czajka has provided no reason, and we see no reason, why the drafters of the RUEFJA and the DC UEFJA would want different limitations periods to apply depending on whether a party established a foreign judgment using the common-law approach or a more streamlined approach. *See, e.g.*, *Alexander Constr.*

*Co. v. Weaver*, 594 P.2d 248, 250 (Kan. Ct. App. 1979) ("The Uniform Enforcement of Foreign Judgments Act was instituted to provide a more effective and efficient time-saving procedure for the enforcement of judgments obtained in foreign jurisdictions. Our adoption of this Act does not extinguish the judgment creditor's right to bring or file an action to enforce [a] foreign judgment in this state. It is merely another method available to the judgment creditor. The statute of limitations applicable to enforcement of a foreign judgment in Kansas should be the same regardless of which of these methods of enforcement is chosen by the judgment creditor.") (citation omitted).

Third, the common-law procedure sheds light on how best to understand the language in Section 15-352 providing that a foreign judgment filed in Superior Court "shall have the same effect . . . as a judgment of the Superior Court." In essence, Mr. Czajka's theory is that a foreign judgment filed in Superior Court should be given the same effect as a hypothetical Superior Court judgment rendered on the same date that the foreign judgment was entered. The foregoing discussion suggests that it makes more sense to consider a different hypothetical Superior Court judgment: the judgment that would have been rendered if the more cumbersome common-law procedure had been followed. As we have explained, such a judgment triggers a new limitations period. The text of Section 15-352 can quite reasonably be read to require that filed foreign judgments be given the same effect.

### 5. Mr. Czajka's Arguments

Taken together, the foregoing considerations persuade us that the filing of a foreign judgment in Superior Court triggers a new twelve-year limitations period, measured from the date on which the filed foreign judgment could thereafter be enforced in Superior Court. Mr. Czajka makes two additional arguments in support of the contrary conclusion, but we are not convinced by them.

Mr. Czajka argues that parties filing a foreign judgment in Superior Court should not be better off than parties who have judgments initially entered in Superior Court. We are not convinced by that argument for several reasons. First, providing for longer overall limitations periods in cases involving interstate efforts to enforce judgments does not seem unreasonable. Second, parties with Superior Court judgments may well benefit from that approach if they need to enforce their judgments in foreign jurisdictions. Third, parties with Superior Court judgments have the ability to seek to extend the limitations period if necessary, by filing a motion to revive the judgment. *See* D.C. Code § 15-103 (permitting extension of limitations period to enforce judgment for additional twelve years). *See generally Nat'l Bank of Washington v. Carr*, 829 A.2d 942, 945 (D.C. 2003) ("If appellees offer no other defense or cause why the judgment should not be revived, the trial court should grant appellant's motion to revive the judgment."). Finally, as we have

previously explained, parties with foreign judgments are in any event able to trigger a new limitations period for enforcement of the judgment in the District of Columbia if they choose to proceed by filing an action under the common-law procedure preserved by D.C. Code § 15-356.

Mr. Czajka also suggests that permitting foreign judgments filed in Superior Court to trigger a new limitations period would result in unreasonably long periods within which parties could enforce judgments. We agree with the Fourth Circuit's response to a similar argument:

> Finally, Asterbadi proposed during oral argument numerous horribles that he envisions will result from the fact that creditors will be able repeatedly to restart a statute of limitations through the simple act of registration, defeating any purpose for the limitation. The posited consequences, however, are no different than have always existed under the more burdensome process of suing on an original judgment to obtain a new judgment in the enforcement jurisdiction. When the new judgment was entered, it carried with it the limitations period then applicable to judgments in the State of entry. Moreover, creditors in many States—including in Maryland—are also able to renew existing judgments indefinitely and thus extend enforcement with new limitations periods without any adversarial process.

*Asterbadi*, 841 F.3d at 246. We also note that Mr. Czajka has not provided support for the idea that such abuses have arisen in the federal courts or in the numerous states that follow the rule that we adopt today. That may be because creditors presumably have no motive to unreasonably delay enforcement of their judgments.

## 6. Response to the Dissent

The dissent concludes that the statute of limitations began to run in this case on the date that the California judgment was issued. *Infra* at 27-56. Our reasoning differs from that of the dissent in four main respects.

### i.

The dissent states that treating the filing of a foreign judgment under D.C. Code § 15-352 as creating a new District of Columbia judgment would "collide[] with the statute's text." *Infra* at 34. Our ruling, however, does not rest on the theory that filing the California judgment in the District created a new District of Columbia judgment. We therefore have no occasion to address the merits of that theory, and we express no view as to the correctness of that theory.

### ii.

In our view, D.C. Code § 15-101(a)'s text does not unambiguously indicate whether the statute of limitations applicable in Superior Court when a party seeks to enforce a judgment rendered in the District of Columbia begins to run (1) the moment a judgment could have been enforced anywhere in the country, or perhaps even the world if the dissent is truly unwilling to infer that Section 15-101(a) has any implicit limitation; (2) the moment the judgment could have been enforced in

the District of Columbia; or (3) the moment the judgment could have been enforced in the issuing jurisdiction. For the reasons we have explained, we think the better reading is that the statute of limitations begins to run when the judgment could have been enforced in the District. In reaching that conclusion, we are not "inserting qualifying language of our own invention." *Infra* at 49. Rather, we are interpreting ambiguous language in a provision, keeping in mind the principle that "[t]he meaning of a statement often turns on the context in which it is made, and that is no less true of statutory language." *United States v. Briggs*, 141 S. Ct. 467, 470 (2020). D.C. Code § 15-101(a) is a provision of District of Columbia law directed at the enforcement in the Superior Court of judgments rendered by courts in the District. It is natural to conclude that the limitations period that D.C. Code § 15-101(a) sets is triggered by the enforceability of the judgment under District law, not under the law of any other place. *Cf., e.g.*, *Briggs*, 141 S. Ct. at 470-72 (Uniform Code of Military Justice ("UCMJ") statute of limitations applicable to offenses "punishable by death" referred to punishment available under UCMJ, not under other sources of law; "[A] natural referent for a statute of limitations provision within the UCMJ is other law in the UCMJ itself.").

The dissent disagrees with that conclusion but does not fully address the problems raised by the two alternatives the dissent discusses. First, we see no reason why the District's statute of limitations to enforce a judgment rendered in the District

should turn on when that judgment could most quickly have been enforceable in any jurisdiction in the country or perhaps the world. The text of D.C. Code § 15-101(a) does not even remotely suggest such a strange result.

The dissent (*infra* at 50-52) responds that it would not be strange for the limitations period in the District to be shortened if a party also sought enforcement of a District judgment in a different jurisdiction anywhere in the world that permitted judgments to be enforced in less than thirty days. *See* Super. Ct. Civ. R. 62(a) (judgments generally may not be executed upon until thirty days after entry). As we have already indicated, we disagree. We also note that the dissent's response rests on an assumption that "execution might first be issued" on a District judgment, within the meaning of D.C. Code § 15-101(a), only after the District judgment was registered in a foreign jurisdiction. *Infra* at 51-52. At least with respect to the enforcement of District judgments in the District, the law is otherwise. *See Lomax v. Spriggs*, 404 A.2d 943, 949-53 (D.C. 1979) ("execution might first be issued" on judgment when judgment is issued, not when judgment is registered). Under this approach, it would not matter whether a creditor actually registered a District judgment in a foreign jurisdiction. Rather, the time to enforce a District judgment in the District would depend in every case not only on the law of any other jurisdiction or jurisdictions in which the creditor had elected to register the judgment, but also on the law of any other jurisdiction or jurisdiction in which the

creditor could have done so. That approach, in our view, would deepen the incongruity of having the limitations period for enforcing a District judgment in the District turn on the law of other jurisdictions.

Second, the dissent suggests as another alternative that D.C. Code § 15-101(a) could be interpreted to mean that judgments rendered in the District would be enforceable for twelve years from "when an execution first might be issued thereon *in the rendering jurisdiction*." *Infra* at 54. That alternative would require the dissent to infer a limitation not expressed in the text of Section 15-101(a), despite the dissent's stated reluctance to "insert[] qualifying language of [its] own invention" into Section 15-101(a). *Infra* at 49. Moreover, that alternative overlooks that Section 15-101(a) is by its terms already limited to judgments rendered in the District. In other words, the District is the only rendering jurisdiction contemplated by Section 15-101(a). There is simply no basis to infer that Congress implicitly imposed a limitation that would have been entirely irrelevant to the provision Congress enacted.

Finally, we note that both alternative approaches suggested by the dissent seem to contradict the dissent's statement that its "interpretation benefits from simplicity" because parties need only look to District law. *Infra* at 31. To the contrary, under both of the two alternatives discussed by the dissent, the

enforceability of a foreign judgment in D.C. will turn on the law of other jurisdictions: either (1) the fastest jurisdiction in the country or perhaps the world or (2) the jurisdiction that rendered the foreign judgment. In fact, the approach the court adopts is the one that "benefits from simplicity." Under that approach, there is a single, simple answer that does not turn on the provisions of foreign law: a foreign judgment is enforceable for twelve years after the judgment is filed and enforceable in the Superior Court.

### iii.

The dissent expresses the view that if filed foreign judgments have the same limitations period as Superior Court judgments, then the prior method of establishing a foreign judgment by initiating a civil action in Superior Court will be superfluous. *Infra* at 36-45. As the dissent points out, *id.* at 37, the DC UEFJA explicitly preserved the latter method. D.C. Code § 15-356 ("Optional procedure. The right of a judgment creditor to bring an action to enforce a judgment in lieu of a proceeding under [the DC UEFJA] remains unimpaired."). The dissent's point here rests entirely on the assumption that the only reason a creditor would file a civil action rather than filing the judgment under the DC UEFJA is to get the benefit of a longer enforcement period. *Infra* at 39-41. The dissent provides no support for that assumption, and the assumption is not obviously correct. It is true that D.C. Code

§ 15-352's filing procedure was intended to be "expeditious." Report on Bill 8-56 at 2. But it does not necessarily follow that creditors would never have occasion to prefer the more extensive procedures available under the optional procedure retained in D.C. Code § 15-356. In fact, it appears that creditors do sometimes continue to use the latter procedure. *See, e.g.*, *Tipton v. State ex rel. Lottery Comm'n*, No. 03-21-00133-CV, 2022 WL 3722389, at *2 (Tex. App. Aug. 30, 2022) (State of Oklahoma chose to enforce Iowa judgment in Texas through common-law enforcement action rather than under Texas UEFJA); *Joseph C. Sansone Co. v. Woodland St., LLC*, No. CV-20-6131647, 2022 WL 1179803, at *2 (Conn. Super. Ct. Apr. 12, 2022) (creditor chose to enforce Missouri judgment in Connecticut through common-law enforcement action rather than under Connecticut UEFJA); *GreatAmerica Fin. Servs. Corp. v. Lillington Fam. Chiropractic, PA*, 791 S.E.2d 663 (Table), at **3 (N.C. Ct. App. 2016) (creditor permissibly brought independent action in North Carolina to enforce Iowa judgment rather than registering foreign judgment under UEFJA).

In any event, the dissent in our view gives undue weight to the possibility of superfluity. There is a significant preference for giving all of the words in a provision independent effect, but that is not a flat requirement. *See, e.g.*, *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 988-89 (D.C. 2015) ("The canon against surplusage is not an absolute rule . . . .") (internal quotation marks omitted); *Lamie*

*v. U.S. Tr.*, 540 U.S. 526, 536 (2004) ("[O]ur preference for avoiding surplusage constructions is not absolute."); *District of Columbia v. Jerry M.*, 717 A.2d 866, 871 (D.C. 1998) (The presumption against redundancy, "while properly a part of the court's interpretive calculus, is not dispositive of the case.").

Like the drafters of the RUEFJA, the D.C. Council elected to provide a less cumbersome route for the enforcement of judgments but to retain as an option the prior common-law process. Neither the drafters of the RUEFJA nor the D.C. Council explained why they left the prior common-law process intact, but the decision to do so might well have simply reflected "an abundance of caution." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008) (internal quotation marks omitted). Moreover, there is no indication in the legislative history that either the drafters of the RUEFJA or the D.C. Council intended to make less cumbersome statutory procedure less useful to creditors by giving them a shorter limitations period. Finally, the dissent provides no logical reason why the D.C. Council would have wanted the less cumbersome procedure to have a shorter limitations period. The dissent suggests that the Council might have wanted to reserve the longer limitations period for cases in which debtors received "more procedural protections." *Infra* at 44. The main problem with that theory is that the dissent has not identified any procedural protections available under the common-law procedure that would be unavailable under the DC UEFJA. *See* D.C. Code § 15-352 ("A

foreign judgment filed with the Clerk shall have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner.").

In sum, we do not view the canon against superfluity as outweighing the considerations that support the interpretation we adopt.

**iv.**

Finally, the dissent states that the approach adopted by the court "privileges filed foreign judgments over D.C. judgments." *Infra* at 47. We disagree. Under the court's approach, both foreign judgments and D.C. judgments are enforceable for twelve years after they become enforceable in the District. It is true that a party with a foreign judgment who waits some time before filing the judgment in the District can end up having more than twelve years to enforce the judgment. In the many jurisdictions that follow the approach adopted by the court in this case, however, the same is true for a party with a D.C. judgment who waits some time before filing the judgment in a foreign jurisdiction.

In any event, for reasons we have explained, *see supra* at 18, we are not persuaded by the dissent's concerns about undue delay. Creditors have no incentive

to delay, and such delay has apparently not proven to be a problem in the many jurisdictions that follow the approach that we adopt. Moreover, creditors with D.C. judgments can freely seek to revive their judgments. D.C. Code § 15-103. Finally, contrary to the dissent's suggestion, *infra* at 47-48, debtors are free to raise "the same" defenses to a registered foreign judgment as may be raised to D.C. judgments. D.C. Code § 15-352.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*

SHANKER, *Associate Judge*, with whom BECKWITH and EASTERLY, *Associate Judges*, join, dissenting: Holt Graphic Arts ("HGA") secured a judgment against Allen Wilson in California state court in 2001, filed that judgment in the District of Columbia in 2006, and sought to execute on the judgment in 2018. District law provides, as relevant here, that a judgment is enforceable by execution for a period of twelve years "from the date when an execution might first be issued thereon." Execution could have been issued on HGA's judgment in California in 2001—well more than twelve years before HGA sought to execute on the judgment—but the majority holds that HGA nonetheless complied with D.C.'s statute of limitations because it filed the judgment in D.C. in 2006. In the majority's view, twelve years "from the date when an execution might first be issued thereon" means twelve years

from the date the judgment was filed in the District of Columbia; therefore, a creditor with a foreign judgment, who could have executed on that judgment years earlier, gets the benefit of a fresh twelve years to enforce the judgment starting on the date the creditor chooses to file the judgment in the District.

I respectfully dissent. I see no basis to conclude that the filing of a foreign judgment—an administrative act that does not result in the issuance of a new D.C. judgment upon the foreign judgment—restarts the clock on when execution might first have been issued on that still-foreign judgment. Because HGA's judgment could first have been executed on in 2001, the limitations period within which to enforce it expired well before 2018, and we should reverse the Superior Court's decision to the contrary.

## I. The Statutory Scheme

HGA filed its foreign judgment under D.C. Code § 15-352, which authorizes the enforcement of an authenticated foreign judgment that has been filed with the Clerk of the Superior Court. The limitations period in D.C. for enforcing a judgment is twelve years "from the date when an execution might first be issued thereon." *Id.* § 15-101(a). The question before us is whether Section 15-101(a)'s limitations period began to run on HGA's judgment when the judgment was rendered in California or when it was filed in the District.

## A.  Section 15-352

Section 15-352 provides that "[a] foreign judgment filed with the Clerk shall have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner."  D.C. Code § 15-352.  The first question, then, is what it means to give a foreign judgment the "same effect," subject it to the "same procedures" or "defenses," and allow it to "be enforced or satisfied in the same manner" as a "judgment of the Superior Court."  *Id.*

I would interpret Section 15-352 as maintaining a foreign judgment's status as a foreign judgment created at the time of its entry in the foreign jurisdiction but applying to the judgment the same protections and procedural rules applicable to a D.C. judgment.  This interpretation makes sense for four reasons.

First, Section 15-352 and its neighboring provisions refer to the original foreign judgment.  Section 15-352 does so itself when it confers the "same effect" of a D.C. judgment to the preexisting "foreign judgment."  D.C. Code § 15-352.  Even after that foreign judgment has been filed, Section 15-354(b) still refers to that same "foreign judgment."  *Id.* § 15-354(b) ("If the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior Court shall stay enforcement of the *foreign*

*judgment . . . .*" (emphasis added)). Indeed, it does not appear that a creditor receives a new piece of paper with a new judgment at any point in the filing process. The only judgment in the creditor's hands remains the original foreign judgment.

Second, this interpretation treats foreign judgments as equal to domestic judgments. For example, a D.C. judgment expires twelve years after it first became executable. *See* D.C. Code § 15-101(a). Under my approach, so too does the filed foreign judgment. Its life does not extend beyond the enforcement period afforded a D.C. judgment simply because the judgment holder waited before filing the judgment in the District. This equality matters because Section 15-352's command that courts give filed foreign judgments the "same effect" and subject them to the "same procedures" as domestic judgments requires that we treat filed foreign judgments equally to—but not superior to or more generously than—D.C. judgments. *Id.* § 15-352.

Third, by treating filed foreign judgments as they are treated in the rendering jurisdiction, this approach aligns with the requirements of the Full Faith and Credit Clause—the foundation for Section 15-352.[1] *See Sun Oil Co. v. Wortman*, 486 U.S.

---

[1] The Full Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other state. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S.

717, 722, 726 (1988) (explaining that the Full Faith and Credit Clause permits jurisdictions to apply their own procedural rules to foreign judgments—including statutes of limitations). The Full Faith and Credit Clause requires only that the foreign judgment be "entitled to the same degree of recognition in a sister state as would be afforded by the state of original rendition." *Nader v. Serody*, 43 A.3d 327, 332 (D.C. 2012) (internal quotation omitted). California courts treat the judgment in question as one created in 2001. D.C. courts should do the same, and the Full Faith and Credit Clause requires nothing more.

Fourth, my interpretation benefits from simplicity. If a judgment creditor or debtor wishes to know how a registered foreign judgment will operate in the District, all they need to do is look to the relevant D.C. procedural law—in this case Section 15-101(a)'s statute of limitations—and apply those procedures directly to the judgment they have before them, just as they would for a D.C. judgment.

---

Const. art. IV, § 1. "Although the District of Columbia is not a state, the Full Faith and Credit Clause is also applicable to the District." *J.J. v. B.A.*, 68 A.3d 721, 726 (D.C. 2013); *Loughran v. Loughran*, 292 U.S. 216, 228 (1934) ("[C]ourts of the District are bound, equally with the courts of the states, to observe the command of the full faith and credit clause, wherever applicable.").

## B.  Section 15-101(a)

Having concluded that a filed foreign judgment operates as the original foreign judgment except that it is enforceable in the District and subject to D.C. law, the next question is how the D.C. statute of limitations applies to such a judgment. D.C. Code § 15-101(a) provides that a judgment "is enforceable, by execution issued thereon, for the period of twelve years only from the date *when an execution might first be issued thereon.*" D.C. Code § 15-101(a) (emphasis added). Execution might first have been issued on the judgment in this case in 2001, when HGA first obtained the judgment in California. *See* Cal. Civ. Proc. Code § 683.010 (West 2024) ("[A] judgment is enforceable under this title upon entry."). Therefore, the twelve-year limitations period to enforce the judgment in the District began running in 2001.

The administrative act of filing a judgment in the District does not alter when "execution might first be issued thereon" and thus does not affect the limitations period. D.C. Code § 15-101(a). Section 15-101(a)'s reference to when "execution *might* first" occur, *id.* (emphasis added), reflects a focus not on the judgment creditor's choice of when to enforce the judgment but rather on events outside their control that made the judgment *potentially* enforceable. If a judgment creditor fails to seek a writ of execution for their judgment, the limitations period will nevertheless run because the creditor could have tried to enforce the judgment but chose not to.

The choice to enforce or not to enforce the judgment remained entirely within their control. Instead, what determines the starting point for the limitations period under Section 15-101(a) is something generally beyond the control of the litigants: when a judgment becomes enforceable. *See id.* Although a party may choose when to bring a civil suit, the enforceability of a judgment typically depends on the date of the judgment's entry (or thirty days thereafter), which in turn depends on the decision of a judge or jury. *See* Super. Ct. Civ. R. 58(b) (explaining that the clerk must enter a judgment in response to the decision of a jury or court or with court approval); *id.* 62(a) ("Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."). Conversely, a judgment creditor may file an unexpired foreign judgment in D.C. pursuant to Section 15-352 at their leisure. If, however, a judgment creditor waits to file their judgment in D.C., nothing in Section 15-101(a), or the Full Faith and Credit Clause, requires the District to reward their inaction with an extended enforcement period.

In the absence of any limiting language in Section 15-101(a), I read its command that the limitations period commence "when an execution might first be issued thereon" to mean what it says. The limitations period begins "when an execution might first be issued thereon" irrespective of *where* that execution might be issued. The statute is clear, and its text binds us.

## II. Responses to the Majority

My colleagues in the majority understand both Sections 15-352 and 15-101(a) differently. They see Section 15-352 as treating a filed foreign judgment as equivalent to a newly minted domestic judgment created at the time of filing. They interpret Section 15-101(a)'s limitations period as running only once the judgment might first be executed *in the District of Columbia*. For the following reasons, I respectfully disagree.

### A. Section 15-352

My colleagues in the majority take the position that Section 15-352 requires treating a filed foreign judgment like a hypothetical D.C. judgment created at the time of filing. *Supra* at 16. HGA offers the alternative position that Section 15-352 creates a new judgment in the District at the point of filing. *Supra* at 7. Under either interpretation, Section 15-101(a)'s limitations period would run from the time this new judgment (real or hypothetical) became enforceable: the time of filing in the District.

I am unconvinced for three reasons. First, the interpretation that Section 15-352 creates a new judgment in the District collides with the statute's text. Second, both interpretations of Section 15-352—that it creates a new judgment or

that the foreign judgment must be treated as a hypothetical new judgment—violate the rule against surplusage. Third, the majority relies on extra-textual materials that offer thin support for its conclusion.

### 1. Section 15-352's Text

HGA's interpretation of Section 15-352 as creating a new D.C. judgment upon filing, *supra* at 7, conflicts with the text of Section 15-352 and its neighboring provisions in the D.C. Uniform Enforcement of Foreign Judgments Act (DC UEFJA), D.C. Law 8-173, § 2(b), 37 D.C. Reg. 5005 (Oct. 2, 1990). As explained above, statutory provisions in the DC UEFJA refer to the judgment as a "foreign judgment" both before and after filing. *See, e.g.*, D.C. Code § 15-352 ("A *foreign judgment* filed with the Clerk shall have the same effect . . . . (emphasis added)); *id.* § 15-353(b) ("Promptly upon the filing of the *foreign judgment* . . . the Clerk shall mail notice of the filing of the *foreign judgment* to the judgment debtor . . . . (emphasis added)); *id.* § 15-354(b) ("If the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior Court shall stay enforcement of the *foreign judgment* . . . ." (emphasis added)). "Foreign judgment" is defined to exclude D.C. judgments, so when the DC UEFJA refers to the judgment as a foreign judgment it cannot mean a new D.C. judgment. *Id.* § 15-351(2) ("'Foreign judgment' means any

judgment, decree, or order of a court of the United States or of any court that is entitled to full faith and credit in the District."). Because the statute refers to the preexisting foreign judgment rather than a newly minted D.C. judgment, we should assume that Section 15-352 does not create a new judgment.

As the dissenting opinion at the Division stage explained, "[t]his textual distinction has interpretative import and real world consequences." *Czajka v. Holt Graphic Arts, Inc.*, 285 A.3d 524, 536 (D.C. 2022) (Easterly, J., dissenting). If Section 15-352 does not create a new judgment, then the only judgment in question is the original foreign judgment. Because the foreign judgment is the only relevant judgment, the statute of limitations must apply directly to that original foreign judgment, which in this case was rendered in 2001 and became enforceable that same year.

### 2. The Rule Against Surplusage

The majority's alternative position fares no better. The majority would construe Section 15-352's "same effect" language as equating the foreign judgment with a hypothetical D.C. judgment issued at the time of filing. *Supra* at 16. This construction, however, violates the rule against surplusage because it renders a neighboring provision in the DC UEFJA—Section 15-356—superfluous.

The DC UEFJA presents judgment creditors with two ways to enforce a foreign judgment in the District. First is the common-law method, which the statute preserves in Section 15-356. *See* D.C. Code § 15-356 ("The right of a judgment creditor to bring an action to enforce a judgment in lieu of proceeding under this subchapter remains unimpaired."). This common-law approach allows a judgment creditor to enforce their foreign judgment in the District by creating a new D.C. judgment upon their preexisting foreign judgment. 30 Am. Jur. 2d *Executions* § 580 (2022) ("At common law, a judgment rendered by a court of a sister state may not be enforced without the institution of an action based thereon *and the recovery of a judgment in such action*." (emphasis added)). Doing so requires the judgment creditor to "bring an action." D.C. Code § 15-356. As a defendant in that action, the judgment debtor enjoys an opportunity to raise procedural deficiencies with the judgment before it may be enforced in the District. *See, e.g.*, *Fowler v. Pilson*, 123 F.2d 918, 919, 923 (D.C. Cir. 1941) (affirming the trial court's dismissal of plaintiff's suit seeking to domesticate a foreign judgment under the common-law method because the limitations period had elapsed); *Fehr v. McHugh*, 413 A.2d 1285, 1286 (D.C. 1980) (upholding plaintiff's judgment upon a foreign judgment after institution of a civil action because the foreign judgment was final).

In exchange for the extra work that initiating an action entails and the heightened procedural protections that the process affords defendants, a successful

judgment creditor "emerges with a new D.C. judgment." *Czajka*, 285 A.3d 536 (Easterly, J., dissenting). Because the common-law method results in a new D.C. judgment, the District's twelve-year limitations period applies to the new judgment and begins running only from the point when execution upon that new judgment first became possible. *Supra* at 13 (citing Restatement (Second) of Judgments § 18, cmt. c (Am. L. Inst. 1982)).

This traditional process, however, proved "cumbersome," and the D.C. Council enacted an alternative route to making a foreign judgment executable in the District: Section 15-352—the method HGA used in this case. Super. Ct. Civ. R. 62-III cmt. (explaining that both the rule and DC UEFJA aimed to provide "a simple and expeditious procedure to enforce a foreign judgment" as an alternative to "the cumbersome prior practice of bringing suit to enforce a foreign judgment"). This modern, streamlined process permits judgment creditors to forego instituting a civil action and simply file an authenticated copy of the foreign judgment with the Clerk of the Superior Court. D.C. Code § 15-352. Although a foreign judgment filed pursuant to Section 15-352 remains "subject to the same procedures, defenses, or proceedings" as a domestic judgment, *id.*, because this process does not require the creditor to institute legal proceedings, it falls to the debtor to affirmatively challenge the registered judgment in the District or else oppose it during an enforcement proceeding.

The Council's codification of these two distinct methods for enforcing foreign judgments casts doubt on the majority's reading of Section 15-352. The majority would interpret filing under Section 15-352 to produce an identical result as domestication under Section 15-356. Both would create, at least effectively, a new D.C. judgment on the foreign judgment. The only difference would be that Section 15-356 affords debtors more procedural protections. The majority's interpretation, then, begs two questions: why did the Council go out of its way to preserve the common-law method if it reaches an identical result to Section 15-352; and why would any judgment creditor choose Section 15-356's more arduous process—with more procedural protections for debtors—if Section 15-352 achieves the same result? The rule against surplusage counsels against this result.

We have applied the rule against surplusage to avoid the odd result of a useless statutory provision under similar circumstances. *See Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 183 (D.C. 2021). In *Animal Legal Def. Fund*, we interpreted a statute with two distinct provisions empowering organizations to sue on behalf of themselves or their members. *See id.* The first provision preserved a preexisting path to standing by using "nearly identical language" to a prior version of the statute that this court had interpreted as coextensive with Article III's standing requirements. *Id.* at 182 & n.5. The question facing the court in *Animal Legal Def. Fund* was whether the second, newly enacted standing provision permitted

something more. *See id.* at 182-83. As in this case, that second provision came with limitations not applicable to the first provision. *Id.* at 183. The court explained that the second provision "would be pointless if it incorporated Article III's restrictions" because the first provision already did that. *Id.* Interpreting the second provision as reaching the same result as the first—which, as here, reaffirmed a preexisting avenue—"would violate the basic principle of statutory interpretation that each provision of a statute should be construed so as to give effect to all of its provisions, not rendering any provision superfluous." *Id.* (internal quotation and alterations omitted). Indeed, because the second provision included additional restrictions, "it would never make sense for nonprofits to [sue under the second provision] when they might sidestep those additional barriers [by using the first provision]." *Id.*

The same is true here. Here too we face a statute with a preexisting route and a new route. And here too one route brings with it additional hurdles for the movant. Interpreting Sections 15-352 and 15-356 to reach identical results would make Section 15-356 "pointless," and it "would never make sense for" judgment creditors to use it. *Id.* Therefore, I would apply the rule against surplusage, as we did in *Animal Legal Def. Fund*, to avoid this implausible result.

The majority resists following the rule against surplusage for three reasons. First, the majority suggests that its interpretation of Section 15-352 might not

supplant the common-law approach entirely. *Supra* at 23-24. That the two methods would enjoy the same enforcement period, says the majority, does not mean they are identical in every respect.

Perhaps. But it is not just the coextensive enforcement periods that create superfluity in the majority's construction. The majority construes Section 15-352 as treating the filed foreign judgment identically to a new judgment created at the time of filing. *Supra* at 16. Yet that is precisely what Section 15-356 already does by creating just such a new judgment upon the preexisting foreign judgment. The majority's interpretation thus makes Section 15-356 redundant. The majority never points to a specific distinction between the D.C. judgment created via the common-law method and the real or hypothetical D.C. judgment created by Section 15-352 under its reading, and I cannot identify one. This suffices to apply the rule against surplusage.[2]

Second, the majority explains that the rule against surplusage is not an inexorable command. *Supra* at 24-25. True enough. But that does not mean that

_____

[2] The majority observes that use of the common-law method for domesticating judgments persisted in some jurisdictions after those jurisdictions adopted streamlined methods even where those jurisdictions follow the majority's interpretation. *Supra* at 24. But the fact that a handful of litigants in other jurisdictions have apparently used their states' common-law method for unknown reasons should not affect our statutory interpretation here. Those litigants may have simply been unaware the new procedure existed.

we should dismiss it without compelling justification. For example, we might decline to apply the canons of construction where their application would severely distort the plain language of a statute. *See, e.g.*, *Lucas v. United States*, 305 A.3d 774, 777 (D.C. 2023) (declining to apply the *noscitur a sociis* canon "where, as here, a plain-meaning approach resolves the meaning of statutory language"). But in light of the majority's own view that the statute is ambiguous, *supra* at 7, this should be precisely the type of case in which we would afford the rule against surplusage substantial weight.

The cases the majority references declining to apply the rule against surplusage speak to a different limitation of the rule not implicated in this case. *Supra* at 24-25. There are two distinct iterations of the rule against surplusage: surplusage within a single statutory provision—particularly involving lists—and surplusage between two different sections. The cases the majority cites involve the former, *see Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004) (acknowledging that its interpretation would make the word "attorney" in a list of professionals superfluous); *District of Columbia v. Jerry M.*, 717 A.2d 866, 871-72 (D.C. 1998) (declining to apply the rule against surplusage to a list defining the term "institution" because it was likely "that the drafter's focus was on ensuring that the legislation covered all institutions intended to be included, and not on defining strictly exclusive categories"); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226-27 (2008) (rejecting

the rule against surplusage in the context of a "specific example" in a "general phrase" and noting that the Court's interpretation did not necessarily create superfluity and the contrary interpretation might itself violate the rule against surplusage), or ultimately concluded that there was no surplusage in the first place, *see Rotunda v. Marriott Int'l., Inc.*, 123 A.3d 980, 988-89 (D.C. 2015). The rule against surplusage carries less weight in lists within a single section—because legislatures drafting lists frequently seek to cover their bases—than it does in cases where the rule guards against the nullification of an entire statutory section. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *Moskal v. United States*, 498 U.S. 103, 120 (1990) (Scalia, J., dissenting) ("Nor should [the rule against surplusage] be applied to the obvious instances of iteration to which lawyers, alas, are particularly addicted . . . ."). This case involves the second version of the rule against surplusage because the majority's interpretation would render superfluous Section 15-356 in its entirety—which is "another part of the same statutory scheme" as Section 15-352. *Marx*, 568 U.S. at 371. In other words, it requires assuming that the Council unwittingly drafted an entire section without realizing that it had no independent meaning. I would not impute such carelessness to the Council.

Finally, the majority responds that (1) Section 15-352's legislative history lacks evidence that the Council sought to create different enforcement periods for Sections 15-352 and 15-356, and (2) I provide "no logical reason why the D.C. Council" would have wanted such a distinction. *Supra* at 25. With respect to the legislative history, the distinction the legislature crafted was between a method that creates a new judgment upon a judgment and one that does not. It is only as a result of this distinction, which, for the reasons articulated above is reflected in the statutory text, that the methods receive different enforcement periods. It is thus unsurprising that the Council never mentioned the enforcement periods specifically. As for a logical reason for doing so, it makes sense that the Council would want creditors to undergo a process with more procedural protections for debtors before earning the benefit of an extended limitations period. The majority sees the procedural protections afforded judgment debtors with respect to Sections 15-352 and 15-356 as identical, *supra* at 25-26, but that is because it focuses only on the procedural protections *after* either the judgment was filed under Section 15-352 or a new judgment was created pursuant to Section 15-356. The disparity in procedural protections exists *before*, if one compares the process of filing via Section 15-352—in which the debtor gets no procedural protections—with the process of creating a new domestic judgment with Section 15-356—in which the debtor benefits from the procedural protections inherent in instituting a civil action. *Supra* at 37-38. In any

event, in the order of operations for statutory interpretation, application of traditional tools like the rule against surplusage and other interpretive canons precedes consideration of legislative history and purpose. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 404 n.5 (2021) (explaining that canons of interpretation are part of a plain-meaning analysis because courts use them "to confirm their assumptions about the 'common understanding' of words").

Because Section 15-352's text does not contemplate the creation of a new judgment and because construing it to equate the foreign judgment with a D.C. judgment created at the time of filing violates the rule against surplusage, I would reject those interpretations. Instead, I would understand Section 15-352's command to give a registered foreign judgment "the same effect . . . as a judgment of the Superior Court," D.C. Code § 15-352, as permitting the judgment's enforcement in the District subject to D.C. law without creating any new judgments—real or hypothetical.

### 3. Other Considerations

The majority reaches its contrary interpretation largely through reliance on extra-textual materials. As the Division dissent explained, those sources in fact provide little support for the majority's conclusions.

First, the legislative history, if anything, supports interpreting Section 15-352 as not creating a new judgment. *See Czajka*, 285 A.3d at 541-43 (Easterly, J., dissenting) (recounting the DC UEFJA's legislative history). The DC UEFJA was modeled after the Revised Uniform Enforcement of Foreign Judgments Act (RUEFJA), "which in turn has its foundations in the Full Faith and Credit Clause." *Id.* at 541. As discussed above, the Full Faith and Credit Clause does not require that a receiving jurisdiction create a new judgment. *Id.* at 542. When the commission that devised the RUEFJA created a filing procedure for state judgments, it noted that some states went above and beyond the Full Faith and Credit Clause but that the RUEFJA aimed to require only the minimum mandated by the Constitution. *Id.*

Second, the weight of state authority interpreting similar statutes is split. *See id.* If we focus only on states that have conclusively determined the issue—i.e., where the state's high court has weighed in—then, based on the cases cited by the majority, the split evens out to three states on each side. *Supra* at 10-11.

Third, the decisions of the federal courts of appeals that persuade the majority are inapposite. *Supra* at 12. They interpret a different statue, 28 U.S.C. § 1963, which operates within a context in which the Full Faith and Credit Clause does not apply. *See Czajka*, 285 A.3d at 544 (Easterly, J., dissenting); *Baldwin v. Iowa State*

*Traveling Men's Ass'n*, 283 U.S. 522, 524 (1931) ("[F]ull faith and credit . . . is not involved, since neither of the courts concerned was a state court."). Relying on these decisions—beyond any persuasive power in their specific interpretive arguments, which the majority opinion never discusses—requires accepting a number of inferential leaps. It requires us to infer that the Council envisioned the DC UEFJA operating just like Section 1963 because the DC UEFJA borrows language from the RUEFJA, which, in turn, was inspired by Section 1963, which was interpreted by some federal courts of appeals to reset the limitations period to the point of registration. *See Czajka*, 285 A.3d at 544 & n.14 (Easterly, J., dissenting). Moreover, these federal-court interpretations were rendered only after the Council had already passed the DC UEFJA. *Id.*; *see also Home Port Rentals, Inc. v. Int'l Yachting Grp., Inc.*, 252 F.3d 399, 407 (5th Cir. 2001) (explaining that *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965), the only federal case referenced by the majority that predates the DC UEFJA's passage, did not confront the question at issue here). Because of Section 1963's tenuous connection to the DC UEFJA, I do not find the federal decisions persuasive.

Finally, policy considerations weigh against the majority's interpretation because their interpretation privileges filed foreign judgments over D.C. judgments. A judgment creditor holding a D.C. judgment has twelve years to enforce their judgment. D.C. Code § 15-101(a). But a foreign judgment holder, under the

majority's construction, may sit on their foreign judgment up until the day before it expires and then file the judgment in the District and gain an additional twelve-year enforcement period. The majority argues that this hardly creates a distinction because the domestic judgment holder may simply move to revive their judgment and similarly gain an additional twelve years. *Id.* § 15-103; *supra* at 27. Maybe so, but judgment debtors may defend against revival under Section 15-103(a) by either raising a "defense" or showing "cause why the judgment should not be revived." *Nat'l Bank of Wash. v. Carr*, 829 A.2d 942, 945 (D.C. 2003). Section 15-101(a) affords judgment debtors no such remedy when a creditor extends their foreign judgment by filing it in D.C. under the majority's interpretation. The majority suggests debtors' remedy must be the same in either situation because Section 15-352 promises debtors "the same" defense as could be raised against a D.C. judgment. D.C. Code § 15-352; *supra* at 25-26. Not so. A creditor filing a foreign judgment in the District has not moved to revive their judgment, as they would be required to if they wished to prolong the life of a domestic judgment. Therefore, a debtor cannot raise the same defenses against a creditor registering their foreign judgment as they could against a debtor moving to revive a domestic judgment.

Although the majority takes comfort in the idea that judgment creditors have little incentive to delay enforcing their judgments, *supra* at 26-27, this very case

suggests that they do sometimes fail to enforce their claim for years on end, and that failure inflicts costs. Limitless limitations periods deny debtors finality and repose, and they can tie up property subject to judgments—as the judgment at issue in this case has. To the extent policy concerns play a role in this case, they weigh against the majority's conclusion.

## B. Section 15-101(a)

As explained above, I understand Section 15-101(a) to establish a limitations period that runs "from the date when an execution might first issue" upon the judgment irrespective of where that execution might issue. D.C. Code § 15-101(a). The majority, on the other hand, perceives Section 15-101(a)'s limitations period as running only when a judgment becomes enforceable in the District of Columbia. It reaches this conclusion for two reasons: (1) the majority views Section 15-101(a)'s context as favoring interpreting the word "execution" to mean execution in the District of Columbia, and (2) the majority believes my interpretation would lead to a "strange result" because the limitations period would turn on the opportunity for execution in other jurisdictions. *Supra* at 20-21. I am not convinced. I see little reason to depart from Section 15-101(a)'s plain text by inserting qualifying language of our own invention—executable only "within the District of Columbia"—on account of these arguments.

With respect to the majority's context argument, I agree that context plays a role in interpreting statutes, whether ambiguous or not. *See King v. Burwell*, 576 U.S. 473 (2015) ("[O]ftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 592 U.S. 120, 132 (2000))); *accord id.* at 500-01 (Scalia, J., dissenting). I disagree, however, that Section 15-101(a)'s context supports cabining the meaning of "execution."

The majority emphasizes two pieces of context: (1) Section 15-101(a) forms part of D.C. law, and (2) it applies only to judgments rendered in the District. *Supra* at 20. These contextual clues, however, reveal little in the context of this case, where we must discern how D.C. law applies to judgments rendered outside the District. Moreover, this geographical context is outweighed by another piece of context: Section 15-101(a) is a statute of limitations. "[S]tatutes of limitations are primarily designed to assure fairness to *defendants*." *Smith v. Davis*, 953 F.3d 582, 591 (9th Cir. 2020) (emphasis added) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). They "reflect legislative judgment of what is an adequate time for a person of ordinary diligence to bring an action." *Hecht v. Resol. Tr. Corp.*, 635 A.2d 394 (Md. 1994). From the perspective of a defendant—in this context a judgment debtor—their interest in finality and repose does not change based on where the creditor decides to enforce the judgment. Because Section 15-101(a) is a statute of

limitations and thus focuses on fairness to defendants and debtors, the question is not *where* a judgment creditor may execute their judgment but *whether* they may execute the judgment against the debtor. If a creditor fails to enforce their judgment after twelve years, which Section 15-101(a) deems an adequate time period, the interest in fairness to the defendant wins out and the judgment expires. Although context can inform a statute's plain meaning, in this case, Section 15-101(a)'s context as a statute of limitations suggests that "Congress said what it meant and meant what it said." *Yates v. United States*, 574 U.S. 528, 555 (Kagan, J., dissenting). The only question for purposes of Section 15-101(a)'s limitations period is "when an execution might first [have been] issued" on the judgment. D.C. Code § 15-101(a).

As for the majority's second argument, that the plain-text interpretation leads to a "strange" result, I simply disagree. To be sure, it is possible that the lack of any limiting language accompanying "when an execution might first be issued thereon" could allow the limitations period for a judgment to begin running before the judgment became enforceable in the District. For example, imagine that a judgment creditor immediately registers a D.C. judgment in another jurisdiction that, unlike D.C., allows immediate execution on a judgment. *E.g.*, Cal. Civ. Proc. Code § 683.010 (West 2024) ("[A] judgment is enforceable under this title upon entry."). The judgment would be executable in that jurisdiction even though it could not yet

be enforced in D.C. *See* D.C. Super. Ct. Civ. R. 62(a) (staying the enforcement of judgments for thirty days after entry). The same would be true, as the majority notes, if a creditor registered their judgment in a foreign country that allowed immediate execution of judgments. *Supra* at 20-21. The limitations period would commence once the judgment became enforceable either in the rendering jurisdiction (in this case the District) or in a jurisdiction in which the creditor had registered the judgment.

I do not consider this result particularly odd. If a judgment creditor elects to pursue enforcement in another jurisdiction—presumably because the debtor owns property there—it is reasonable for the limitations period in the District to commence because the creditor could begin enforcing the judgment in that other jurisdiction. Put differently, they would have a full twelve years to enforce their judgment—precisely what Section 15-101(a) envisions. If the judgment creditor does not want the limitations period to begin running in the District, they can wait thirty days before registering their judgment elsewhere. The majority faults this approach for turning on "the law of other jurisdictions." *Supra* at 22. But I see no reason why D.C. law must avert its eyes from the factual reality that a creditor who

has registered their judgment in another jurisdiction may execute their judgment there as well.[3]

Although I do not believe it necessary, even if we needed to construe Section 15-101(a) to avoid this result, the majority's apparent solution is not the obvious one. There are two ways to avoid what the majority views as an absurd result. One way is to read into Section 15-101(a) the phrase "in the District," such

---

[3] The majority further argues that my position assumes that a D.C. judgment is not executable in a foreign jurisdiction within the meaning of Section 15-101(a) until it is registered in that foreign jurisdiction and that this view sits uneasily with our holding in *Lomax v. Spriggs*, 404 A.2d 943 (D.C. 1979). *Supra* at 21. In *Lomax*, we held that Section 15-101(a)'s limitations period governed both recorded and unrecorded judgments. 404 A.2d at 945, 953. The majority appears to infer from this holding, as do I, that an unrecorded domestic judgment is executable for purposes of Section 15-101(a)'s limitations period even if it is not literally executable in the District until it is recorded. *See* D.C. Code § 15-101(a) (establishing that judgments are "enforceable" "when filed and recorded in the office of the Recorder of Deeds of the District of Columbia"). But my view of this case is more consistent with *Lomax* than the majority's. If the limitations period on a domestic judgment runs notwithstanding the judgment holder's failure to record their judgment, the effect of this rule is that the judgment holder may not extend the limitations period by waiting to record their D.C. judgment. I would hold that a foreign judgment holder also cannot extend the limitations period by waiting to file their foreign judgment in the District. In any event, that Section 15-101(a) would consider a D.C. judgment executable in D.C. notwithstanding the judgment holder's failure to record that judgment does not mean a D.C. judgment must be considered executable in a foreign jurisdiction where it has not been registered. Although the processes for recording and registering may be similar, one formalizes an already recognized domestic judgment and the other newly recognizes a foreign judgment. I would not consider a judgment executable for purposes of Section 15-101(a)'s limitations period in a jurisdiction that does not yet recognize the existence of that judgment.

that the limitations period would begin running when "execution might first be issued thereon *in the District*." This is the majority's approach.

But where, as here, we consider qualifying the text of a statute based on a potential, concerning result, prudence demands that we do so narrowly. Reading "in the District" into the statute unduly alters the text compared to a second, less restrictive, alternative: we could instead construe "the date when an execution first might be issued thereon" to mean "the date when an execution first might be issued thereon *in the rendering jurisdiction*." In cases involving D.C. judgments, this would have the same effect as reading "in the District" into the statute because the rendering jurisdiction would be D.C. Thus, in the hypothetical described above, the limitations period would run only once the judgment became enforceable in the District. In the case of foreign judgments, however, where the rendering jurisdiction is the foreign state, the limitations period would begin once the foreign judgment became enforceable in its state of origin. This would hew more closely to the plain language of the statute, which places no restriction on where execution must be possible, than a construction that artificially narrowed the limitations period to twelve years of potential enforcement specifically in the District. Thus, construing "when an execution might first issue thereon" to apply to the rendering jurisdiction both addresses the conundrum raised by the hypothetical and adheres to the plain language of the statute more faithfully than the alternative.

Under either the existing text or a qualifying construction that refers to execution in the rendering jurisdiction, applying Section 15-101(a) to the foreign judgment at issue in this case leads to the same result. Execution of HGA's judgment "might first [have been] issued thereon" in 2001 when the judgment became executable in California.

\* \* \*

A creditor with a foreign judgment who seeks to enforce that judgment in the District of Columbia can proceed under D.C. Code § 15-356 and initiate a civil action, seeking to obtain a new D.C. judgment and a new twelve-year enforcement limitations period that comes with that new D.C. judgment. Alternatively, the creditor can proceed under D.C. Code § 15-352 and file the judgment in the Superior Court, thereby retaining their foreign judgment but obtaining the ability to enforce the judgment in the District under D.C. law and procedures. If the creditor chooses the latter option, the date that the judgment was first executable for purposes of D.C.'s enforcement limitations period remains the date that the still-extant foreign judgment—the only judgment in anyone's hands—was first executable in the rendering jurisdiction. This, in my view, is the most natural reading of the statutory

scheme and the reading that aligns most closely with the Constitution's Full Faith and Credit Clause. Accordingly, I respectfully dissent.[4]

---

[4] HGA argues that, irrespective of when the limitations period began, its enforcement is timely for four reasons. I am not persuaded. First, HGA suggests that it has already executed the judgment because the Superior Court took and retained custody of the property in 2007 via a writ of *fieri facias*. HGA, however, has provided no legal support for its argument that, by the mere issuance of a writ of *fieri facias*, the Superior Court took custody of the condominium. Second, HGA argues that because Mr. Wilson declared homestead over the property, the limitations period was tolled until his death. But D.C. Code § 15-101(a) does not toll the statutory limitations period merely because a debtor declares the property to be their homestead. Instead, the limitations period pauses only by agreement of the parties, an order staying the execution, or an appeal staying the execution. *See* D.C. Code § 15-101(a). HGA does not point to any order staying execution of the judgment or agreement between the parties. *Cf. Dickey v. Fair*, 768 A.2d 540, 541-42 (D.C. 2001) ("A stay must be affirmatively ordered by a court . . . before the twelve-year enforcement period can be tolled under section 15-101(a)(2)."). Third, HGA contends that it revived the judgment in 2017 before executing it and thus the judgment remained live. This 2017 revival, however, was timely only if the limitations period began upon filing of the judgment in 2006, not if it began in 2001 when California rendered the judgment. *See id.* § 15-103 ("An order of revival issued upon a judgment *during the period of twelve years from its rendition . . .* extends the effect and operation of the judgment . . . ."); *Nat'l Bank of Wash. v. Carr*, 829 A.2d 942, 944-45 (D.C. 2003) (holding that motions for revival are timely so long as they are filed before expiration of the limitations period). The Superior Court granted revival in this case only because it construed the statute of limitations as the majority does. Accordingly, this argument does not avoid the question of when the limitations period begins. Fourth, HGA argues that neither Mr. Czajka nor his predecessors in interest raised the statute of limitations defense in Superior Court. Assuming that HGA is correct, we may, in our discretion, consider forfeited arguments when they present purely legal questions for which the factual record is complete, the issue has been fully briefed, and neither party would be prejudiced. *See District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33 n.3 (D.C. 2001). I would exercise that discretion here.